UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MICHAEL CLARK,              )
                            )
    *Plaintiff*              )
                            )
v.                          )     No. 2:11-cv-373-DBH
                            )
MICHAEL J. ASTRUE,          )
**Commissioner of Social Security,**   )
                            )
    *Defendant*              )


***REPORT AND RECOMMENDED DECISION[1]***

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal contends that the administrative law judge should have found that he suffered from an additional severe impairment and relied on invalid testimony from a vocational expert. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act for purposes of SSD only through June 30, 2008, Finding 1, Record at 13; that he suffered from bilateral club feet, obesity, and status post spinal fracture, impairments that were severe but which did not, considered separately or in

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 20, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

combination, meet or medically equal the criteria of any of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id.* at 13-14; that he had the residual functional capacity ("RFC") to perform sedentary work, except that he required a sit/stand option at will, could only occasionally climb, balance, stoop, kneel, crouch, or crawl, and could not be exposed to workplace hazards, uneven surfaces, or rough ground, Finding 5, *id.* at 14; that he was unable to perform any past relevant work, Finding 6, *id.* at 19; that, given his age (19 on the date of alleged onset of disability, May 17, 2008, a younger individual), at least a high school education, work experience, and RFC, using the Medical-Vocational Rules of Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") as a framework for decision-making, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 19; and that, as a result, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, at any time through the date of the decision, Finding 11, *id.* at 21.  The Decision Review Board selected the decision for review, *id.* at 8, but the case was transferred to the Appeals Council, *id.* at 4-6, which declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's appeal also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Step 2 Issue

The plaintiff contends that the administrative law judge should have found that he suffered from a skull fracture and associated traumatic brain injury as a severe impairment. Plaintiff's Itemized Statement of Errors ("Itemized Statement") (ECF No. 12) at 4-7. He cites medical evidence demonstrating that his skull was fractured in a May 2008 accident. *Id.* at 5-6.

Apparently, the same accident gave rise to the spinal fracture that is included in the administrative law judge's RFC. *Id*. at 5.

The dispute herein is not whether the skull fracture occurred, but rather whether its sequelae were severe at the relevant time. While the burden of proof of the existence of a severe impairment is *de minimis*, on appeal the claimant must demonstrate that the outcome of his claim was affected by the omission, in order to establish that any such error was more than harmless. *Nickerson v. Astrue,* No. 1:11-cv-87-GZS, 2012 WL 975641, at *5 (D. Me. Mar. 21, 2012). On this point, the plaintiff cites only his own testimony or his reports to a physician.[2] Itemized Statement at 6. Step 2 requires medical evidence, rather than a claimant's own report of symptoms. *Du Nguyen v. Astrue*, No. 2:11-cv-189-NT, 2012 WL 975674, at *2 (D Me. Mar. 21, 2012).

At oral argument, the plaintiff's attorney responded to my question based on the *Nickerson* standard by saying that taking "the memory piece" of a finding that the skull fracture was severe at Step 2 would "open the possibility of cross-examination" on that point with respect to jobs that require an ability to focus or engage in conversation, and that impairment of that ability "would potentially interfere" with the occupational base. There are several problems with this response.

---

[2] Of the two medical practitioners' records cited by the plaintiff in this regard, one, Chris Pingitore, M.D., is a podiatrist, Record at 288, and thus would not be qualified to opine on the question of whether the plaintiff's traumatic brain injury in 2008 caused symptoms lasting more than 12 months that affected the plaintiff's ability to perform any work-related function, as the plaintiff's attorney conceded at oral argument. The other, Dr. Jeffrey Grassmann, stated on July 7, 2008, two months after the accident, that the plaintiff was "[h]ere for follow up H[ead]A[che] and neck pain s[tatus] p[ost] multitrauma and multifractures[,]" but also stated that "[p]ain is decreasing" and "[n]o H[ead]A[che] for 1 week." *Id*. at 294. Even if this entry in the plaintiff's medical records could be generously construed to indicate a diagnosis that the headaches were the result of the skull fracture and caused more than a minimal effect on the plaintiff's ability to perform work-related activities, there is no indication that Dr. Grassmann expected the headaches to continue at a debilitating level for more than 12 months.

4

First, a finding that the skull fracture was a severe impairment at Step 2 does not necessarily mean that the impairment causes memory problems. The plaintiff has still not provided any citation to medical evidence of that causative relationship.

More important, however, is the fact that this argument offers only speculation. Even if the plaintiff were allowed to rely on an argument first asserted at oral argument, rather than in his itemized statement, there must be some support, in the record, in case law, or in the regulations, for the asserted probable impact on the outcome of the claim. No such authority was presented here.

The plaintiff faults the commissioner for calling a medical expert who "expressly stated upon questioning that he couldn't accurately answer questions related to the measurement of memory problems and headaches resulting from head trauma[,]" Itemized Statement at 6, to testify at his hearing, but the burden at Step 2 remains with the claimant, not the commissioner. Contrary to the plaintiff's suggestion, *id.* at 7, he has proffered no medical evidence of limitations in concentration, persistence, or pace resulting from his skull fracture.

The plaintiff is not entitled to remand on this basis.

### B. Vocational Expert's Testimony

Next, the plaintiff challenges the testimony of the vocational expert on two grounds: first, that his testimony about the number of jobs available "[is] based on a flawed methodology and not on his own knowledge or experience," Itemized Statement at 10, and second, that his testimony that "at least" 50% of unskilled sedentary occupations would remain available with a sit-stand option was not sufficiently specific, *id*. at 11-13.

The administrative law judge addressed the plaintiff's first argument as follows:

> The claimant argued in a post-hearing letter "[t]he problem with those numbers is that they are not representative of the individual jobs cited by

5

> [the vocational expert] but rather represent numbers for entire SOC (Standard Occupational Classification) code groups. (Exhibit 12E). The claimant argued the OEQ methodology is unreliable: "[the OEQ] simply divide[s] the number of jobs published by the Bureau for labor statistics OES survey for the entire group of jobs by the number of different DOT Code jobs within the group." Consequently, the claimant argued, "the basic problem with the VE's job numbers is that they represent aggregate OES groupings that bear no relationship to the job numbers for the actual DOT occupations that the VE testified [the claimant] could perform."

Record at 20-21. The administrative law judge noted further that:

> In the claimant's dubious reliance upon fleeting private communication concerning complex statistical methodology, the claimant did not argue the publisher's acknowledgement [that] the job numbers for any given job were estimates, subject to error, and "… professionals who use this data [need to] incorporate their own knowledge of a specific labor market." (Exhibit 12E).

Record at 21. Accordingly, the administrative law judge concluded:

> The vocational expert testified to this effect. The vocational witness testified within the accepted bounds of his expertise [that] the number of jobs associated with these three cited positions represent actual estimates of jobs for each position as described within the specific SOC in the Occupational Employment Quarterly (OEQ).
>
> There is no regulatory requirement to determine, with the degree of precision raised consequentially [sic] by the claimant's argument, the number of jobs in a given DOT code. 20 C.F.R. §404.1560(c)(2). The Commissioner need only establish by a preponderance of evidence "… work exists in significant numbers in the national economy [a claimant] can do, given [the claimant's] residual functional capacity and vocational factors."

*Id.*

The vocational expert also testified that the OEQ's "explanation of some other statistical information they've put together . . . appears quite sophisticated. I really think it's the best data that's available. I haven't seen anything any better." *Id.* at 56. The plaintiff relies on my recommended decisions in *Clark v. Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237, at *3 (July 19, 2010), and *St. Pierre v. Astrue*, No. 1:10-cv-104-JAW, 2010 WL 5465635, at *2 (D.

Me. Dec. 29, 2010), to argue that any reliance by a vocational expert on data from the OEQ invalidates his or her testimony as to the number of jobs available nationally for a particular job. Itemized Statement at 10-11.

In those cases, however, it was clear that the vocational expert admitted that there was no way to break out the number for a particular job from the OEQ data. *Clark*, 2010 WL 2924237, at *3, *St. Pierre*, 2010 WL 5465635, at *2. In the instant case, the vocational expert testified that he could extract the numbers for the particular jobs at issue from the OEQ data, which, moreover, was the "best data available." Record at 53-56. This material difference distinguishes the instant case from the cited cases and means that the plaintiff is not entitled to remand on this basis. *See Decker v.* Astrue, Civil No. 09-641-P-S, 2010 WL 4412142, at *3 (D. Me. Oct. 31, 2010). To hold otherwise, under the circumstances of this case, would compel a vocational expert to undertake personally a study of the labor market for every specific job he or she might testify is available for a particular claimant, an unnecessarily extensive and expensive requirement to impose upon the defendant.[3]

The plaintiff's second argument challenges the following testimony from the vocational expert:

> Q [by the administrative law judge]: . . . [D]o you have an opinion regarding how much there would be an erosion of the unskilled sedentary base [by a sit-stand option]?
> A: I would – Your Honor, I would think there would be at least half.

Record at 52. The plaintiff contends, Itemized Statement at 11-12, that the administrative law judge "mischaracterized" this testimony when he wrote that "[t]he vocational expert testified

---

[3] The opinion in *McDonald v. Barnhart*, No. 05-69-B-W, 2005 WL 3263937, at * 4 (D. Me. Nov. 30, 2005), also cited by the plaintiff in this regard, Itemized Statement at 10, is readily distinguishable; the vocational expert in the instant case did not testify that "some adjustment" of the numbers would be necessary, that the actual number of jobs would be "not quite as much" or "significantly limited," 2005 WL 3263937 at *4, or in any other similarly "murky" terms.

7

reliably that given all of these factors, at least 50% of the unskilled sedentary occupation [base] would remain, with the erosion due specifically to the need for a sit/stand option." Record at 20.

The plaintiff asserts that "the ALJ incorrectly assumed that the VE testified that at least 50 percent of the occupational base would remain despite the sit-stand option." Itemized Statement at 12. However, this assertion is refuted by the question posed to the vocational expert immediately thereafter by the plaintiff's attorney:

> Q: Mr. Maxim, starting with that least question, you would agree with me, would you not, that there is no set of statistics you can look to that would tell us what the erosion of the base would be from a sit-stand at will option.
> A: Sit-stand is not addressed in the DOT, so statistically you can't pick that out. I thought 50 percent erosion would be a reasonable and conservative reduction.

Record at 52. This question and answer make clear that the vocational expert meant that the reduction in the occupational base would be no more than half.

Contrary to the plaintiff's argument, this testimony does not "leave[] open the possibility that [the plaintiff's] sit-stand option would erode, not just 50 percent of the occupational base, but perhaps 60, 70, or even 95 percent." Itemized Statement at 12.

The plaintiff next challenges this testimony as "simply conclusory," asserting that the vocational expert "was unable to provide any source that statistically analyzes the extent of erosion" and "did not state that his opinion was based on any specific knowledge or experience of his own." *Id*. at 12-13. Nonetheless, the vocational expert was not asked for the basis of his expert opinion on this point. It was incumbent upon counsel for the plaintiff, if he intended to rely on the absence of such support, to ask the question that would elicit that information. *See, e.g., Baker v. Social Sec. Admin. Com'r*, No. 1:10-cv-00167-JAW, 2011 WL 1298694, at * 5 (D. Me. Mar. 31, 2011).

8

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of June, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge